IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
JUN 17 2009

| | | |
|---|---|---|
| Bobby Lee Colding,<br>Petitioner, | )<br>)<br>) | |
| v. | )<br>) | 1:08cv1049 (TSE/TCB) |
| Gene M. Johnson,<br>Respondent. | )<br>)<br>) | |

## MEMORANDUM OPINION

Bobby Lee Colding, a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in the Circuit Court for the City of Norfolk, Virginia for first degree murder. Petitioner also submitted the required filing fee, pursuant to 28 U.S.C. § 1914(a). By Order dated January 21, 2009, respondent was directed to show cause why the writ should not be granted. On February 27, respondent filed a Rule 5 Answer, a Motion to Dismiss, a Memorandum in Support of the Motion to Dismiss, and a Notice pursuant to Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1965). Petitioner submitted a Declaration in Opposition on March 23, and a Motion for Evidentiary Hearing or Other Appropriate Fact-Finding Procedure on March 24. For the reasons that follow, the instant petition must be dismissed, and petitioner's motion must be denied.

I.

On October 16, 2004, Bobby Lee Colding stabbed Brenda Hecke ten times and killed her. Trial Tr. 163:3-4. Specifically, petitioner stabbed Hecke four times in her chest and back, including the three wounds that went through her lungs and heart and were determined to be lethal injuries, once in her back, once in her abdomen, three times in her right arm, once in her right hand, and once

in her left hand. Trial Tr. 163:4-7; 165:16-166:2; 167:6-14.

At the time of the murder, the victim Hecke, her three children, and petitioner were living with Kimberly Kirkwood, who was the victim's cousin, Kirkwood's husband Adrian, and their children. Trial Tr. 42-44. Kimberly Kirkwood testified that prior to petitioner stabbing Hecke, the two had gotten into an altercation regarding whether petitioner would take the couple's children with him if he left Kirkwood's home. Trial Tr. 54:3-6. Petitioner told Hecke that he would not leave without the children, and that he would otherwise "be dead or in jail." Trial Tr. 54:8. Hecke responded that petitioner would "leave with the kids over my dead body." Trial Tr. 54:9-10. Petitioner replied that it could "be arranged." Trial Tr. 54:11. At that point, Kirkwood demanded petitioner leave her home, however, petitioner refused to leave without the couple's children, and the argument escalated. Trial Tr. 55:11-12, 18-25.

Petitioner, who was standing over Hecke as she sat in a chair in Kirkwood's living room, then grabbed Hecke's hair and pulled her to her feet. Trial Tr. 55:22-56:21. Kirkwood attempted to get between Hecke and petitioner, but Hecke "stepped in and came back in between" Kirkwood and petitioner. Trial Tr. 56:20-24. At that point, petitioner reached behind him and pulled from the back of his pants a kitchen knife that Kirkwood testified had been used by her children that morning at breakfast. Trial Tr. 56:23-57:13. Petitioner then stabbed Hecke numerous times, including in her stomach and chest. Trial Tr. 57:15-22. As Hecke tried to get up, petitioner then stabbed her in the back. Trial Tr. 58:1-2.

Kirkwood testified that after she saw petitioner stab Hecke, she ran from her house to obtain police assistance, having previously noticed military police investigating a crime scene near her home. Trial Tr. 58:5-16. As Kirkwood informed the officers that petitioner had stabbed Hecke, she

2

turned towards her home and saw petitioner fleeing from the scene. Trial Tr. 58:18-25. Kenneth Todd Cook, a special agent with the Naval Criminal Investigative Service, saw another agent already running after petitioner and Cook also began pursuing him. Trial Tr. 93:1-4, 16-25; 94:1-7. As Cook ran closer, he saw that petitioner had stopped, and heard the other agent tell petitioner to get on the ground. Trial Tr. 94:20-95:6. As petitioner was being handcuffed, Cook noticed blood spatter on petitioner's chest, arms, and hands, and asked if the blood belonged to petitioner. Trial Tr. 95:9-16. Petitioner replied, "It's my girl's." Trial Tr. 95:17-18. At trial, Kirkwood's husband Adrian testified that the weekend before the murder, he and petitioner had discussed an argument petitioner and Hecke had recently, and petitioner stated that he was so upset he "could have stabbed" Hecke. Trial Tr. 107:23-108:9.

At the conclusion of the government's evidence, one of petitioner's two defense attorneys moved to strike, stating only that "the issue would be as to the issue of premeditation in this case. . . ." Trial Tr. 186:3-7. The trial court denied the motion, ruling that the evidence was sufficient for the case to be submitted to the jury, pointing to the wounds in Hecke's back, the knife, and "other corroborating evidence." Trial Tr. 186:8-17. Petitioner's trial counsel then indicated that petitioner did not wish to present any evidence, the trial court then sua sponte noted counsel's renewed motion to strike, and again denied the motion for the same reasons. Trial Tr. 186:19-24. The jury found petitioner guilty of first-degree murder on October 26, 2005, and recommended a sentence of seventy-five years in prison. Trial Tr. 215:16-17; 249:5-7. On February 10, 2006, the trial court sentenced petitioner to the full seventy-five years of incarceration. Sentencing Tr. 8:23-25.

Petitioner appealed his conviction to the Court of Appeals of Virginia, which affirmed his conviction in a per curiam opinion on August 24, 2006. Colding v. Commonwealth, No. 0418-06-1

3

(Va. App. Ct. Aug. 24, 2006). Petitioner argued in his appeal that the evidence was insufficient to support his conviction, and specifically that the Commonwealth had failed to demonstrate that petitioner acted with premeditation. Id. However, the Court of Appeals held that it would not consider petitioner's argument because it was not presented to the trial court with specificity, and therefore the claim was barred on appeal pursuant to Virginia Supreme Court Rule 5A:18. Id. Petitioner also argued that his sentence was excessive, however, the Court of Appeals determined that this claim also was barred from consideration as a result of petitioner's failure to present the argument to the trial court. Id. Petitioner then appealed to the Supreme Court of Virginia, which refused his petition for appeal on January 30, 2007. Colding v. Commonwealth, No. 061946 (Va. Jan. 30, 2007).

On November 19, 2007, petitioner filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, alleging three claims of ineffective assistance of counsel. Colding v. Warden of the Keen Mountain Corr. Ctr., No. 072523 (Va. May 21, 2008). First, petitioner argued that his trial counsel were ineffective for failing to preserve his claim that the evidence was insufficient to convict him of first-degree murder (Claim 1). Second, petitioner alleged that his trial counsel were ineffective for failing to present a plausible defense of intoxication to the jury, despite evidence to support such a defense (Claim 2). Finally, petitioner claimed that his trial counsel were ineffective for failing to present evidence in support of a heat of passion defense and failing to ask for a voluntary manslaughter instruction (Claim 3). The Supreme Court of Virginia dismissed the petition, holding that none of petitioner's claims satisfied the two-part test articulated in Strickland v. Washington, 466 U.S. 668 (1984), for claims of ineffective assistance of counsel. Id. Petitioner then filed the instant petition on September 25, 2008, raising the same three claims of ineffective

4

assistance of trial counsel, and adding a fourth claim attacking the sufficiency of the evidence (Claim 4). Addendum to Pet. 1-2, 10-11, 32, 51-52.

## II.

Federal review of Claim 4 is barred because the claim is procedurally defaulted and petitioner has failed to show cause for this default. Specifically, petitioner's counsel failed to preserve properly the issue of the sufficiency of the evidence at trial and, as a result, the Court of Appeals expressly determined that the claim was barred from appellate review pursuant to Rule 5A:18 of the Rules of the Supreme Court of Virginia.[1] This finding of procedural default is entitled to a presumption of correctness, Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988) (citing 28 U.S.C. § 2254(d)), because the Court of Appeals explicitly relied on the procedural ground in Rule 5A:18 to deny petitioner relief, and that rule is an independent and adequate state ground for denying relief. Harris v. Reed, 489 U.S. 255, 260, 262-63 (1989); Ford v. Georgia, 498 U.S. 411, 423-24 (1991). First, Rule 5A:18 is substantially identical to the contemporaneous objection rule applied in the Supreme Court of Virginia, Rule 5:25, which the United States Court of Appeals for the Fourth Circuit has determined is an independent and adequate state procedural rule. See Weeks v. Angelone, 176 F.3d 249, 270 (4th Cir.1999). Second, although there is no published authority on the issue, both the Fourth Circuit and the Eastern District of Virginia have held in unpublished opinions that Rule 5A:18 is an independent and adequate ground for denying relief. See King v. Dean, 955 F.2d 41,

---

[1] Rule 5A:18 states that "no ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ." Va. Sup. Ct. Rule 5A:18. The rule further explains that "a mere statement that the judgment . . . is contrary to the law and the evidence is not sufficient to constitute a question to be ruled upon on appeal." Id.

1992 WL 29295, at n.* (4th Cir. 1992) (table); Cephas v. Johnson, 2009 WL 1491424, at *3 (E.D. Va. 2009); Chandler v. Angelone, 2002 WL 32514958, at *8 (E.D. Va. 2002). Thus, because petitioner's claim regarding the sufficiency of the evidence was determined to be barred pursuant to Rule 5A:18 by the Court of Appeals of Virginia, petitioner's identical claim in the instant petition is procedurally defaulted.

Where, as here, a petitioner's claim is procedurally defaulted, the claim can only be reviewed upon a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260. The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman v. Thompson, 501 U.S. 722, 753-54; Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Clanton, 845 F.2d at 1241-42. Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

Petitioner presents two arguments to support his request that this Court address his sufficiency claim on the merits. First, petitioner argues that the Court of Appeals determination failed "to satisfy the adequacy requirement of the said doctrine of procedural default," and states that although the court "refused to hear" the sufficiency issue pursuant to Rule 5A:18, the court did not apply "the said rule, based on finding that the insufficiency of the evidence issue had not been presented to the trial court." Decl. in Opp. to Resp. to Pet. 3-4. Construing petitioner's argument liberally, it appears petitioner is attempting to assert that Rule 5A:18 is not an independent and adequate state ground for denying relief. However, for the reasons explained above, Rule 5A:18 is

6

an independent and adequate state procedural rule. As such, petitioner's first argument must fail.

Second, petitioner argues that even if his claim is procedurally defaulted, his trial counsel's ineffectiveness in failing to preserve this issue constitutes cause to excuse his procedural default. Decl. in Opp. to Resp. to Pet. 3, 5. However, as explained below, petitioner's ineffective assistance of counsel claims are all without merit. Therefore, petitioner's claim of ineffective assistance of counsel cannot excuse his procedural default, and petitioner's challenge to the sufficiency of the evidence therefore is barred from federal review and must be dismissed.

## III.

With respect to the three remaining claims—all of which are ineffective assistance of counsel claims—they are exhausted and preserved on the merits for federal review. However, merits review is sharply limited under § 2254(d). See Wolfe v. Johnson, 565 F.3d 140, 159 (4th Cir. 2009) (noting that the provisions governing federal habeas petitions "substantially constrain" review of an underlying state court decision). A federal court may not grant a state prisoner's habeas petition unless the state court's adjudications of petitioner's claims are contrary to, or an unreasonable application of, clearly established federal law, or are based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that

7

the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410.

## IV.

Section 2254(d) requires dismissal of all three of petitioner's claims of ineffective assistance of trial counsel, because the Supreme Court of Virginia's dismissal of petitioner's claims was neither contrary to, nor an unreasonable application of Strickland v. Washington, 466 U.S. 668, nor was the dismissal based upon an unreasonable determination of the facts. 28 U.S.C. § 2254(d). To establish ineffective assistance of counsel, a petitioner must show (1) that "counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defendant." Strickland, 466 U.S. at 687. To prove that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. Thus, a petitioner must prove that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." Id. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

Furthermore, even if counsel committed some error, including a "professionally unreasonable" error, the judgment may only be set aside if the error had an actual effect on the judgment. Id. at 691. Thus, for a court to find counsel's performance constituted ineffective assistance, "any deficiencies in counsel's performance must be prejudicial to the defense . . . ." Id. at 692. It is not enough for a petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Rather, a petitioner "must show that there is a reasonable

8

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694 (explaining that "a reasonable probability is a probability sufficient to undermine confidence in the outcome").

Ultimately, "failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 700. A successful petition must show both, as they are "separate and distinct elements" of the claim. Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). Moreover, a court does not need to review the reasonableness of counsel's performance if a petitioner fails to show prejudice. Quesinberry v. Taylore, 162 F.3d 273, 278 (4th Cir. 1998).

Claim 1: Failure to Preserve the Issue of Sufficiency of the Evidence

In Claim 1, petitioner argues that his trial counsel were ineffective for failing to preserve for appeal the issue of the sufficiency of the evidence. Addendum to Pet. 1. Petitioner argues that counsel's failure "to obey the requirement of the state's contemporaneous objection rule, as found in Rule 5A:18" by not presenting any argument in support of the motion to strike the Commonwealth's evidence on the issue of premeditation constitutes ineffective assistance. Addendum to Pet. 2. According to petitioner, although the Commonwealth introduced "undisputed and uncontroverted evidence conclusively establishing facts showing that Hecke was stabbed to death and that [petitioner] was the person who had stabbed Hecke," it also introduced "undisputed and uncontroverted evidence from the testimony of two witnesses present at the scene of the killing conclusively establishing facts showing the killing was committed in the course of a sudden quarrel between Hecke" and petitioner over their children. Addendum to Pet. 6. He also notes that the Commonwealth failed to introduce "any evidence to establish a previous grudge" held by petitioner

9

against Hecke. Addendum to Pet. 6.

Petitioner argues that in spite of this, counsel failed to argue with specificity the issue of sufficiency of the evidence regarding premeditation, and based on this failure the Court of Appeals refused to hear the merits of the sufficiency claim. Addendum to Pet. 8. Petitioner asserts that the Supreme Court of Virginia dismissed his ineffective assistance claim "in apparent ignorance of the fact that trial counsel's alleged ineffectiveness prejudiced the outcome of the appellate proceedings . . . ." Addendum to Pet. 9. Petitioner states that this ineffectiveness claim was not adjudicated properly on the merits, because the Supreme Court of Virginia "labored under the misapprehension that 'the proceeding' at issue was the trial proceeding, rather than the proceedings on direct appeal . . . ." Addendum to Pet. 10.

Despite petitioner's contentions, the record belies any assertion that petitioner was prejudiced by counsel's failure to argue with specificity the insufficiency of the evidence on the element of premeditation. As an initial matter, although petitioner claims that he was prejudiced on appeal rather than at trial, his allegation of ineffective assistance lies against trial counsel, therefore the prejudice must be found at the trial level. 466 U.S. at 694. Moreover, although a petitioner may raise claims of ineffective assistance of appellate counsel, for which the Strickland test also applies, see Burger v. Kemp, 483 U.S. 776, 781 (1987), the prejudice still must lie with the proceeding at which counsel made the alleged error. To satisfy the prejudice prong in such a claim against appellate counsel, petitioner must demonstrate that appellate counsel's failure to raise an issue on appeal "fell below an objective standard of reasonableness and, but for that failure, [petitioner] would have prevailed in his appeal." Lawrence v. Branker, 517 F.3d 700, 709 (4th Cir. 2008). Here, petitioner does not allege that appellate counsel was ineffective in raising a matter on appeal, only

10

that trial counsel were ineffective for failing to argue with specificity the sufficiency of the evidence. Thus, petitioner must demonstrate that counsel's alleged error prejudiced his defense at trial.

A review of the record, however, reveals that petitioner was not prejudiced at his trial by counsel's alleged error. In Virginia, "[t]o premeditate means to adopt a specific intent to kill," which "must come into existence at some time before the killing." Smith v. Commonwealth, 261 S.E.2d 550, 553 (Va. 1980). In other words, the killing must be done "on purpose, and not by accident, or without design." Id. (quoting McDaniel v. Commonwealth, 77 Va. 281, 284 (1883)). The intent to kill, however, "need not exist for any particular length of time," as it is "the will and purpose to kill, not necessarily the interval of time," which determines whether the defendant has committed first-degree murder. Id. (quoting Akers v. Commonwealth, 216 S.E.2d 28, 33 (1975)).

Here, the record demonstrates that the evidence was sufficient to support petitioner's conviction as to the element of premeditation. During the course of the argument that preceded Hecke's murder, petitioner threatened Hecke's life, and he had confessed to a witness only a few days before the murder that he had thought about stabbing Hecke. Trial Tr. 54:11; 107:23-108:9. Moreover, the evidence showed that petitioner had hidden a knife on his person the day of the murder,[2] and that he used that knife to stab Hecke ten times, including three different wounds that caused lethal injury. Trial Tr. 56:23-57:13; 163:3-7; 165:16-166:2; 167:6-14. Furthermore, although petitioner seems to argue that the Commonwealth did not present any evidence of a motive, "motive is not an essential element of the crime of murder" in Virginia. Smith, 261 S.E.2d at 554. The

---

[2] In his Declaration in Opposition to respondent's Motion to Dismiss, petitioner disputes this fact because the evidence did not "prove beyond a reasonable doubt" that he had hidden the knife in his pants at some point before the stabbing. However, the Commonwealth was not required to so prove, and petitioner's objections are without merit. Decl. in Opp. to Mot. to Dismiss 10.

evidence presented by the Commonwealth then was sufficient to find premeditation under Virginia law, and as a result, petitioner has failed to demonstrate that counsel's alleged errors prejudiced his defense at trial. Accordingly, rejection of this claim by the Supreme Court of Virginia was not contrary to, nor an unreasonable application of <u>Strickland</u>, and this claim must be dismissed.

<u>Claim 2: Failure to Present an Intoxication Defense</u>

In Claim 2, petitioner argues that trial counsel were ineffective for failing to present a voluntary intoxication defense when there was evidence to support such a defense. Addendum to Pet. 10-11. Petitioner asserts that a psychological evaluation report done regarding petitioner's state of mind at the time of the offense showed that he had ingested the drug ecstacy and this had "negatively impacted his mental state." Addendum to Pet. 11-12. Petitioner quotes the report, which suggests that petitioner's "complete lack of memory for the events in question . . . might be related to his abuse of ecstasy." Addendum to Pet. 12. He alleges that "any reasonably competent defense attorney" in possession of the report, which his counsel had months before the trial began, "would have known that under the prevailing law, the psychologist's findings and opinion . . . were material to the deliberation and premeditation elements of murder of the first degree, capable of negating those elements and, at minimum, sufficient to raise a reasonable doubt in the mind of the jury" regarding petitioner's guilt. Addendum to Pet.12-13.

Despite petitioner's assertions, Claim 2 fails both the performance and prejudice prong of <u>Strickland</u>. Under Virginia law, voluntary intoxication can be a defense to a charge of first-degree murder. <u>Giarratano v. Commonwealth</u>, 226 S.E.2d 94, 99 (Va. 1980). However, "mere intoxication" is insufficient. <u>Id.</u> Rather, voluntary intoxication is a defense only where the defendant "voluntarily has become so intoxicated as to be unable to deliberate and premeditate . . . ." <u>Id.</u>

12

Here, although petitioner alleges that he was intoxicated as a result of taking three ecstasy pills, and despite his conclusory assertions to the contrary, the evidence in the record does not support the conclusion that he was so intoxicated that he was incapable of premeditation. Petitioner primarily relies on the forensic evaluation done by David H. Keenan, a licensed clinical psychologist and forensic evaluator who testified on petitioner's behalf during the sentencing phase of his trial. According to petitioner, Keenan's report shows that petitioner's intoxication "negatively impacted" his state of mind at the time of the killing "to such an extent that [petitioner] could not have deliberated and premeditated and, therefore, could not have adopted a specific intent to kill, as required to sustain a conviction for premeditated murder of the first degree." Addendum to Pet. 13. However, the report does not make the representations petitioner asserts that it does. Although it does state that petitioner's "long term substance abuse problems and his abuse of substances at the time of the offense negatively impacted his mental state," it says nothing about premeditation and deliberation by petitioner. Ex. E to Pet. Instead, it states only that petitioner self-reported the regular use of ecstasy, and self-reported the ingestion of three ecstasy pills prior to the incident with Hecke. Id. It also indicates that "a substantial component of [petitioner's] impaired mental state and his memory would seem to be attributable to the use of Ecstasy and Marijuana," but concludes that petitioner's mental condition did not appear to meet insanity criteria. Id. There are no other references to petitioner's alleged intoxication, and nothing relating to the issue of petitioner's ability, or lack thereof, to premeditate.

Moreover, petitioner acknowledges in his own Addendum that Hecke's cousin, Kimberly Kirkwood, who had actually awakened petitioner and been with him for much of the morning before the murder, had not seen him take any medication or drugs or drink any alcohol. Addendum to Pet.

13

26. Furthermore, the record is replete with actions taken by petitioner that evince the deliberate and premeditated nature of his actions. As noted above, petitioner hid a knife on his person, made statements to a witness about his thoughts of stabbing Hecke, and threatened to kill Hecke before pulling the knife on her. Additionally, after petitioner stabbed Hecke, he was sufficiently cogent to flee the scene of the crime, and also to respond correctly and coherently to officers when they ordered him to stop and get on the ground, and asked him whose blood was on his clothing. Trial Tr. 93-95. Despite petitioner's conclusory allegations that he was so intoxicated he was unable to premeditate, nothing in the record supports this claim, and petitioner presents no such additional evidence in his petition. Thus, it cannot be said that counsel's decision not to present a voluntary intoxication defense was outside the range of professionally competent assistance.

Additionally, even assuming counsel committed some error by not presenting an intoxication defense, there is nothing to the record to indicate that petitioner would have been prejudiced at trial. In Virginia, a jury instruction must be supported by "more than a scintilla of evidence." Hatcher v. Commonwealth, 241 S.E.2d 756, 758 (Va. 1978). As the discussion above illustrates, there was no evidence to support such a defense, therefore, petitioner would not have been entitled to a jury instruction on voluntary intoxication. As a result, petitioner has failed to show there is a reasonable probability that, but for counsel's alleged errors, the result of his trial would have been different. Accordingly, the dismissal of this claim by the Supreme Court of Virginia was neither contrary to nor an unreasonable application of Strickland, and Claim 2 must be dismissed.

Claim 3: Failure to Present a Heat of Passion Defense or Seek a Voluntary Manslaughter Instruction

Finally, in Claim 3, petitioner argues that his trial counsel were ineffective for failing to present evidence to support a heat of passion defense and to request that the jury be instructed on the

14

lesser-included offense of voluntary manslaughter. Addendum to Pet. 32. Petitioner asserts that counsel should have explained to the jury that petitioner was filled with "passion" and "rage" when he stabbed Hecke, such that he did not have the requisite intent necessary to support a conviction for first-degree murder. Addendum to Pet. 36. He further alleges that this, combined with the weak evidence presented by the Commonwealth, would have been sufficient to create a reasonable doubt in the minds of the jurors regarding petitioner's intent. Addendum to Pet. 36. Petitioner also states that even without presenting such evidence, counsel still should have requested an instruction on voluntary manslaughter because there is a "reasonable probability that the jury would have found that [petitioner's] actions fit the description of that offense . . . ." Addendum to Pet. 36-37.

To reduce a homicide to voluntary manslaughter in Virginia, "the killing must have been done in the heat of passion and upon reasonable provocation." Barrett v. Commonwealth, 341 S.E.2d 190, 192 (Va. 1986). Heat of passion "is determined by the nature and degree of provocation," but "malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice." Id. Words, no matter how "grievous or insulting," are insufficient to constitute reasonable provocation and downgrade a homicide from murder to voluntary manslaughter. Martin v. Commonwealth, 37 S.E.2d 43, 46 (Va. 1946).

Here, petitioner alleges only that he was more susceptible to provocation because of his mental condition, and that for this reason counsel should have argued that the killing of Hecke was done in the heat of passion. Addendum to Pet. 36. In Virginia, "evidence of a criminal defendant's mental state at the time of the offense is, in the absence of an insanity defense, irrelevant to the issue of guilt." Stamper v. Commonwealth, 324 S.E.2d 682, 688 (Va. 1985). Thus, petitioner's argument is without merit. Furthermore, he fails to explain how reasonable provocation otherwise existed,

15

where Hecke was seated and trying to avoid a physical confrontation with petitioner. Trial Tr. 55-57. Although petitioner repeatedly notes that counsel invoked the words "passion" and "rage" when describing the killing of Hecke, this does not necessarily require or presuppose that counsel should have presented a heat of passion defense. Without sufficient evidence to present a heat of passion defense, it was within the bounds of reasonable professional assistance for counsel to make a strategic choice to argue instead that petitioner's actions amounted to second-degree murder by focusing on the issue of deliberateness and premeditation. Moreover, without such evidence, there was no reason for counsel to request a jury instruction on voluntary manslaughter, because as noted above, an instruction must be supported by "more than a scintilla of evidence" in Virginia. Hatcher, 241 S.E.2d at 758; see also Arnold v. Commonwealth, 560 S.E.2d 915, 919 (Va. Ct. App. 2002) (finding that defendant was not entitled to a heat of passion instruction where there was no evidence that the victim had committed any action invoking fear or rage in the defendant). Thus, petitioner has failed to demonstrate that counsel's performance was deficient.

However, even assuming counsel committed some error by failing to present a heat of passion defense or seek a jury instruction on such a defense, petitioner is unable to show prejudice. First, as already noted, with no evidence to support a heat of passion defense, petitioner would not have been entitled to a jury instruction on voluntary manslaughter even if counsel had sought such an instruction. Second, petitioner was convicted of first-degree murder by the jury, which requires a determination by the jury that petitioner acted with malice. See, e.g., Mercer v. Commonwealth, 142 S.E. 369, 370 (Va. 1928 ("To constitute murder . . . malice is an essential constituent."); Arnold, 560 S.E.2d at 919 ("Every malicious homicide is murder."). As explained above, Virginia law states that malice and heat of passion are mutually exclusive, and the presence of malice excludes passion.

16

See Barrett, 341 S.E.2d at 192. Thus, the determination that petitioner acted with malice precludes a finding by the jury that petitioner acted in the heat of passion. As a result, petitioner also has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of his trial would have been different. Because the dismissal of this claim by the Supreme Court of Virginia was neither contrary to nor an unreasonable application of Strickland, Claim 3 must be dismissed.

Request for Evidentiary Hearing:

As a final matter, petitioner has filed what he has captioned as a Motion for Evidentiary hearing or Other Appropriate Fact-Finding Procedure, in which he requests an evidentiary hearing on the merits of his ineffective assistance of counsel claims and afford him the opportunity to show cause for his procedural default of Claim 4. As petitioner's claims can be addressed thoroughly on the existing record, and because he is not otherwise entitled to evidentiary development of his claims, the Motion for an evidentiary hearing will be denied. See Conaway v. Polk, 453 F.3d 567, 582 (4th Cir. 2006) (noting that where the facts alleged do not entitle a petitioner to relief, and he has not satisfied one of the six requirements articulated in Townsend v. Sain, 372 U.S. 293, 313 (1963), he is not entitled to an evidentiary hearing); Green v. Johnson, 431 F. Supp. 2d 601, 608-17 (E.D. Va. 2006) (same).

V.

For the reasons stated above, respondent's Motion to Dismiss will be granted, petitioner's Motion for an evidentiary hearing will be denied, and this petition will be dismissed with prejudice. An appropriate Order shall issue.

Entered this 17th day of June 2009.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge

18